UNA GASOLINE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10693. Promulgated February 4, 1931.

*Charles H. Garnett, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

## OPINION.

Lansdon: The controversy here hinges on the actual cash value and the cost to the petitioner of 12 oral contracts for the purchase of casing-head gas, and of certain services in connection with the design and construction of a plant for the conversion of casing-head gas into commercial gasoline. Such value and cost must be determined as factors (1) of the invested capital of the petitioner for each of the taxable years, and (2) of the basis for determining gain or loss from the sale of the property of the petitioner in the second taxable year.

The contracts in question were acquired without cost by five of the individuals, who, later, became members of a partnership and stockholders of the petitioner, which was the corporate successor thereof. The five contract holders, together with a sixth man who joined in their enterprise with a contribution of services, measured

by one-fifth of the value of the contracts, turned all the contracts into the partnership, and advanced substantial sums of money for the construction of the manufacturing plant required for the business operations. The partnership was formed on April 12, 1917. The contracts were then turned in, and the necessary cash was advanced ratably by the partners at different times prior to October 14, 1917. The services with which Bendit paid for his interest in the partnership were rendered during the same period.

The petitioner was incorporated on October 14, 1917, and, on that date, or shortly thereafter, issued its authorized capital stock in six equal lots of the par value of $25,000 each, to the several members of the partnership, for which it received all the assets thereof, which included the 12 contracts and the partially completed plant. The petitioner contends that the contracts paid in by the partnership had an actual cash value at that date of at least $37,316.94, and that included in the cost of the plant was the amount of $7,463.39 paid to Bendit by the other five partners as compensation for his services in designing and constructing their manufacturing plant, and that both such amounts should be included in the computation of its invested capital and the basis for determining gain or loss from the sale of the property in 1920.

Petitioner called several witnesses on the question of the value of the contracts and services in question. All have sufficient qualifications to testify either as experts or owners of an interest in the property here involved, or of similar properties. The opinion of the witnesses as to the actual cash value of the contracts varied from $35,000 to $100,000. All who testified as to the value of Bendit's services agreed on at least the amount claimed by the petitioner. The respondent introduced no evidence in rebuttal and, in our opinion, in cross-examination, failed materially to weaken or discredit the evidence adduced by the petitioner. After study of the record we are satisfied that the contracts in question collectively had an actual cash value of at least $37,316.94, when they were paid in for stock, and that the services of Bendit, in designing and supervising the construction of the plant, were worth at least one-fifth of the value of the contracts, or $7,463.39.

The respondent excluded the cash value of the contracts from his computation of the petitioner's invested capital on the ground that they were unenforceable because they purported to transfer an interest in real estate by a mere oral agreement. In our opinion, the position is not well taken. Casing-head gas, as it emerges from the well, is the personal property of the owner of the well, and, therefore, its sale, by oral contract, is not within the statute of frauds. The re-

spondent also contends that even if the contracts were enforceable and had the value claimed by the petitioner, they may not be included in invested capital, since their acquisition falls within the provisions of section 331 of the Revenue Act of 1921, which provides as follows:

That in the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner, if such asset had not been so transferred or received: *Provided*, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment, or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

We think that the above cited statutory provision disposes of the question here. The contracts were acquired after March 3, 1917, both by the partnership and the petitioner. They cost the partnership nothing. More than 50 per cent interest in the partnership was retained by the same persons as stockholders of the corporation. The value of the contracts therefore can not be included in the computation of petitioner's invested capital for either of the taxable years. *Penney & Long, Inc.*, 15 B. T. A. 232, 238. See also *East Market Street Hotel Co.*, 11 B. T. A. 796.

Our conclusion that the cash value of the casing-head-gas contracts may not be included in petitioner's invested capital and the reasons therefor apply with equal force to the contention that the value of Bendit's services should be included therein. The facts show such services cost the partnership nothing and, therefore, regardless of their value, could not be included in its invested capital. It follows that this item must be excluded from petitioner's invested capital in conformity with the statute cited above. The situation might have been different if stock had been issued to Bendit in payment for his services in designing and supervising the construction of capital assets. *Federal Plate Glass Co.*, 6 B. T. A. 351. Here the stock was not issued to Bendit for his services, but to the partnership for value created by such services, which, we think, clearly distinguishes this proceeding from the decision cited above.

In March, 1920, the petitioner sold all its property, including contracts, plant and good will, for $175,000. It contends that by such sale it sustained a loss sufficient to extinguish its tax liability on operating income for that year. The respondent has computed profit from the sale in the amount of $52,613.92, a result that he reaches by excluding any cost of the gas contracts and the service rendered by Bendit from the basis for determining gain or loss and by certain adjustments on account of exhaustion of contracts and depreciation of plant. We think the amount of $37,316.94 should be included in the cost of petitioner's property at date of incorporation.

We have found, as a fact, that at that time the casing-head-gas contracts had that actual cash value. They were paid in for stock of  value not less than such amount, since the evidence is uncontradicted that at date of incorporation, or shortly thereafter, the stock of the petitioner was worth par. The amount of $7,463.39 should also be included in the basis for determining gain or loss from the sale of the petitioner's property, since the values·created by Bendit's services were included in the gross value of the plant acquired in exchange for stock. In conformity with our conclusion as to the casing-head contracts, we are of the opinion that the plant value created by the services of Bendit cost the petitioner the amount alleged and that such cost should also be included in the basis for computing gain or loss from the sale of the property in the taxable year.

The question referred to as depletion, but which must be regarded as relating to the exhaustion of the contracts for the purchase of casing-head gas, is somewhat subsidiary to the issues already decided. .The respondent has heretofore allowed certain deductions from petitioner's income in each taxable year on such account. Since he later reached the conclusion that the contracts had no cost, he now contends that all exhaustion was erroneously allowed and concedes that the basis for determining gain or loss should be adjusted accordingly. The record and our conclusions above decide all the questions relating to exhaustion. The petitioner's contracts at date of incorporation covered gas at least in the volume of 308,000,000 cubic feet, which it acquired at a cost of $37,316.94, and this cost it is entitled to recover free from tax. On this basis the allowable exhaustion up to the date of sale will be recomputed and corresponding adjustments made in invested capital, income, and the basis for determining gain or loss from the sale of the property in 1920.

The petitioner also alleges that excessive depreciation of its plant has been applied by the respondent to reduce the basis for determin-

ing gain or loss from the sale of the property, and, even if the amounts of depreciation conform to the facts, it denies the legality of such deductions in determining basic cost. Since no evidence relating to depreciation was adduced, we conclude that the petitioner has abandoned the fact basis of this issue. The subtraction of accrued depreciation from original cost, or 1913 value, in determining the basis for computing gain or loss from the sale of capital assets is in conformity with our decision in *Even Realty Co.*, 1 B. T. A. 355, and many others subsequently decided.

Reviewed by the Board.

*Decision will be entered under Rule 50.*